```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
DRL SOFTWARE SOLUTIONS, LLC,             :         17cv9125(DLC)
                                         :
                    Plaintiff,           :         OPINION AND ORDER
                                         :
          -v-                            :
                                         :
JOURNEYPURE, LLC,                        :
                                         :
                    Defendant.           :
                                         :
---------------------------------------- X
```

For the plaintiff:
Galen Joseph Criscione
M. Salman Ravala
Nadin Rabelo Linthorst
Criscione Ravala, LLP
90 Park Avenue, Suite 1700
New York, New York 10016

For the defendant:
Eugene David Kublanovsky
Kublanovsky Law, LLC
817 Broadway, 5th Floor
New York, New York 10003

Joy Boyd Longnecker
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201

DENISE COTE, District Judge:

This dispute involves a contract for use of a software program between plaintiff DRL Software Solutions, LLC ("DRL") and defendant JourneyPure, LLC ("JourneyPure"). Both parties have moved for partial summary judgment on DRL's breach of

contract claims.  For the reasons that follow, DRL's motion is denied and JourneyPure's motion is granted.

**Background**

The following facts are undisputed or taken in the light most favorable to the non-moving party, unless otherwise noted. JourneyPure provides addiction, substance abuse, and behavioral health services at rehabilitation centers across the United States.  In July 2014, JourneyPure entered into a contract with DRL, pursuant to which DRL agreed to provide JourneyPure with a software platform intended for use by patients or service providers ("the Agreement").

The Agreement provided that, in exchange for use of DRL's software platform, JourneyPure would pay an initial set-up fee and then would be invoiced for a monthly fee to vary based upon the number of JourneyPure clients who had used the software in the previous month.  The Agreement also specified that JourneyPure had to pay a minimum of $1,500 per month and a minimum of $45,000 per year to DRL.

The Agreement contains a termination provision, section 5.2, which lists a number of grounds upon which DRL may terminate the agreement and which also states that JourneyPure "may terminate the contract if DRL does not comply with the service and performance requirements as listed in exhibit C."

Exhibit C lists the type of customer services that DRL will provide and the target availability of these services. The subsequent provision of the Agreement, section 5.3, provides for the effects of termination. It states, in relevant part, that "[u]pon the termination of this Agreement for any reason (a) [JourneyPure] shall immediately pay DRL all amounts due to DRL under this Agreement."

Section 9.2 of the Agreement lists warranties by which JourneyPure agrees to abide "in its use of the Software and the Hosted Services." Of relevance to this dispute, the parties agreed in this section that JourneyPure would

> (e) not attempt to gain unauthorized access to, or disrupt the integrity or performance of, the Software or the Platform, or the data contained therein; (g) not modify, copy or create derivative works based on the Software or any of the Services; (h) not reverse engineer the Software or any of the Services; (i) not access the Software or the Platform for the purpose of building a competitive product or service or copying its features or user interface for its own use or for distribution to others; (j) not permit access to the Software or the Platform by a competitor of DRL.

The Agreement also provides that it would be governed by New York Law. The parties also agreed that the venue for any dispute arising under the agreement would be in federal or state court in New York City.

On October 20, 2015, in response to JourneyPure entering into a software subscription agreement with a third party named Sierra Tucson, JourneyPure and DRL amended the Agreement ("the

Amendment"). The Amendment extended the terms of the original contract until October 31, 2017 and amended section 5.2 of the Agreement to provide for payment between the parties in the event that JourneyPure terminated the Agreement due to termination of its third-party software subscription agreement with Sierra Tucson. This amendment to section 5.2 of the Agreement states:

> (h) Customer may terminate this Agreement without cause upon thirty (30) days' advance written notice on or before October 31, 2017 in the event Customer's agreement with Sierra Tucson is terminated. In the event of termination under (h), Customer shall immediately pay the full amount of Renewal Subscription Term, as set forth in Exhibit F-1.

Exhibit F-1, attached to the Amendment, provides that JourneyPure may either elect to pay DRL $112,000 each year or "Renewal Subscription Term," or may pay according to a payment schedule that includes an upfront $20,000 per Renewal Subscription Term and a monthly fee of $9,970 plus a graduated monthly expense charge based on the number of clients who use the system each month.

In early 2016, JourneyPure contracted with Bob Wind, a software consultant, to develop a JourneyPure branded version of an addiction recovery software program. Wind testified that soon after he began consulting for JourneyPure he accessed DRL's software platform. According to his testimony, he obtained access to the software through a link to the platform that was

4

provided to him in an email. He also testified that he only accessed the software once and for "probably 45 seconds." Wind further testified that, while he was working with JourneyPure to develop the new software program, JourneyPure never referenced DRL's software and never told him they wanted his software to have any of the same functions as DRL's software.

On June 26, 2016, JourneyPure provided DRL with written notice that it was terminating the Agreement. After this termination notice, DRL continued to send JourneyPure invoices for several months. According to JourneyPure's President and CEO, after terminating the Agreement, JourneyPure paid all amounts owed to DRL for services rendered through the date of termination.

On November 21, 2017, DRL filed a complaint against JourneyPure asserting claims for breach of contract, unjust enrichment, fraudulent misrepresentation, innocent misrepresentation, and copyright infringement. On March 8, 2018, this Court granted JourneyPure's motion to dismiss DRL's copyright and unjust enrichment claims. Both parties filed partial motions for summary judgment on DRL's breach of contract claim on September 14, 2018. The motions became fully submitted on October 22, 2018.

**<u>Discussion</u>**

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Smith v. Cnty. of Suffolk</u>, 776 F.3d 114, 121 (2d Cir. 2015) (citation omitted). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party. <u>See</u> <u>Eastman Kodak Co. v. Image Technical Servs., Inc.</u>, 504 U.S. 451, 456 (1992); <u>Gemmink v. Jay Peak Inc.</u>, 807 F.3d. 46, 48 (2d Cir. 2015). "[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." <u>Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.</u>, 391 F.3d 77, 83 (2d Cir. 2004) (citation omitted) (emphasis omitted).

Once the moving party has asserted facts showing that the non-movant's claims or affirmative defenses cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by

6

affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Unopposed facts set forth in a moving party's Rule 56.1 statement are ordinarily deemed admitted. See Local Civil Rule 56.1(c); Titan Indem. Co. v. Triborough Bridge & Tunnel Auth., Inc., 135 F.3d 831, 835 (2d Cir. 1998). But, "[b]efore summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." Jackson v. Fed. Exp., 766 F.3d 189, 194 (2d Cir. 2014). Only disputes over material facts will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

The pending motions for summary judgment primarily focus on DRL's three allegations of breach of contract. First, that JourneyPure breached its Agreement with DRL by failing to pay all amounts due under the Agreement upon termination; second, that JourneyPure breached the Agreement by permitting unauthorized access the DRL software by a third party; and, third, that DRL breached the Agreement by creating a software program derived from DRL's software.

The elements of a breach of contract claim under New York law are well established.[1] They are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004).

Under New York law, "a fundamental objective of contract interpretation is to give effect to the expressed intention of the parties." In re MPM Silicones, 874 F.3d 787, 795 (2d Cir. 2017). If the intent of the parties is clear from the four corners of a contract, its interpretation is a matter of law that the court may determine by summary judgment. American Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 316 (2d Cir. 2006). "The initial inquiry is whether the

---

[1] In the Agreement, the parties chose New York law to govern the terms of the Agreement.

contractual language, without reference to sources outside the text of the contract, is ambiguous." In re MPM Silicones, 874 F.3d at 795.

> An ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business.

Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 466 (2d Cir. 2010) (citation omitted). By contrast, a contract is unambiguous if its "language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 69 (2d Cir. 2014).

"If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." Torres v. Walker, 356 F.3d 238, 245 (2d Cir. 2004). In interpreting contracts, "words should be given the meanings ordinarily ascribed to them and absurd results should be avoided." Mastrovincenzo v. City of New York, 435 F.3d 78, 104 (2d Cir. 2006) (citation omitted). Additionally, "an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible."

9

LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (citation omitted).

In addition to the breach of contract allegations, JourneyPure's motion for summary judgment also seeks to dismiss DRL's claim for loss of opportunity damages. Damages for lost profits may only be awarded where the "amount of such damages [are established] with reasonable certainty." Schonfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000). "Although lost profits need not be proven with mathematical precision, they must be capable of measurement based upon known reliable factors without undue speculation." Id. (citation omitted). Evidence will support an award for lost profits where the figure is a "just and reasonable inference," as opposed to "speculation or guesswork." Autowest, Inc. v. Peugeot, Inc., 434 F.2d 556, 566 (2d Cir. 1970) (citation omitted).

DRL's Motion

DRL has moved for partial summary judgment on its first allegation of breach -- that JourneyPure violated the termination provision of the Agreement by failing to pay DRL the outstanding fees that would be due to DRL through the end of the term of the Agreement, which DRL asserts is $191,520. This allegation turns on interpretation of section 5.3 of the Agreement. This section provides that "[u]pon termination of this Agreement for any reason: (a)[JourneyPure] shall

10

immediately pay DRL all amounts due to DRL under the Agreement." This provision of the Agreement is ambiguous. The Agreement provides no further definition of "amounts due." This provision could reasonably be read either to require payment of the Agreement's required monthly invoiced payments up to the date of termination, which was June 26, 2016, or to require payment of the sum of the outstanding monthly payments and/or annual minimum payments through October 31, 2017, the end date of the amended Agreement.

Aside from insisting that the terms of the contract are clear, DRL provides no argument as to why section 5.3 should be interpreted to require payment through the end date of the amended Agreement. Because DRL has not carried its burden of showing that no rational factfinder could interpret the Agreement otherwise, its motion for summary judgment on this breach of the Agreement's termination provision is denied.

JourneyPure's Motion

JourneyPure's partial motion for summary judgment seeks dismissal of DRL's second and third allegations of breach of contract and of DRL's damages claim for loss of opportunity. In its second breach allegation, DRL claims that JourneyPure breached the Agreement's representations and warranties provision by "disclosing Plaintiff's proprietary software to a third party without Plaintiff's written authorization." DRL's

11

third breach theory alleges that JourneyPure breached the Agreement by creating and using a new software that was derived from DRL's software.  The provision at issue in both allegations is section 9.2 of the Agreement, but DRL does not specify which sub-sections of this provision JourneyPure breached.

Both parties agree that JourneyPure permitted Bob Wind to access the DRL software while under contract with JourneyPure to develop a software application.  This may violate section 9.2(j) of the Agreement, which forbids JourneyPure "permit[ting] access to the Software or the Platform by a Competitor of DRL." JourneyPure argues, however, that because Wind only accessed the DRL software for approximately forty-five seconds and did nothing further with the software, DRL cannot show that any damages resulted from its breach and so their breach of contract claim fails as a matter of law.

In support of its argument that DRL cannot show that damages resulted from Wind's software access, JourneyPure primarily relies on Wind's deposition testimony asserting that he only accessed the software for forty-five seconds, that the software he developed for JourneyPure was developed from scratch without any knowledge of the DRL software, and that JourneyPure did not ask him to incorporate any features from DRL's software into the software he developed.  JourneyPure also points to testimony from DRL's corporate representative stating that DRL

would suffer no monetary damages "[i]f all [a third party] do[es] is see [the software] and do nothing with it." DRL presents no evidence to rebut this testimony but argues that summary judgment should be denied because a reasonable factfinder could conclude that Wind's forty-five seconds of access to the software was sufficient to gain proprietary knowledge. DRL has produced no evidence from which a factfinder could conclude that such a breach caused DRL damages. The theoretical possibility that this brief access could have resulted in damages is insufficient to defeat summary judgment.

DRL has also failed to present sufficient evidence to rebut JourneyPure's motion for summary judgment to dismiss the third breach allegation, which alleges that JourneyPure created a software application that was derived from DRL's software in violation of section 9.2 of the Agreement. JourneyPure presented testimony from Wind, who developed JourneyPure's software, asserting that he created this software "from scratch" and that JourneyPure never asked him to emulate DRL's software. DRL presents no evidence to rebut this assertion, arguing instead that summary judgment should be denied because the veracity of Wind's statements must be evaluated by a factfinder. This argument is insufficient to create a genuine dispute as to whether the software Wind developed for JourneyPure was derived from DRL's software.

Finally, JourneyPure moves for summary judgment to dismiss DRL's claim for approximately $2.5 million in loss opportunity damages.[2] DRL's assertion of $2.5 million in damages is unduly speculative and must be dismissed. In support of this damages calculation, DRL has produced a chart that purports to estimate payments that DRL would have received from JourneyPure from June 2016, the month in which JourneyPure terminated the agreement, through October 2018. This chart also estimates payments that DRL would receive over the same time period from two unnamed companies and from an application called "MYDrl." According to the testimony of the DRL corporate representative who created this chart, these estimations rely on several assumptions, including: (1) that JourneyPure would continue to grow its user base for the two months following termination at the same rate as it did during the first eight months of the amended Agreement; (2) that, beginning the third month after termination, JourneyPure would continue to have at least 175 new users of the DRL software per month through its existing contracts; and (3) that JourneyPure would enter into additional

---

[2] There is some dispute between the parties regarding whether this claim for damages arises from DRL's breach of contract claim or its fraudulent misrepresentation and innocent misrepresentations claims, which are not the subject of the pending motions. Regardless, such lost profit damages must be reasonably certain. See Steitz v. Gifford, 280 N.Y. 15, 20 (1939).

contracts with DRL in order to provide services to new facilities or treatment providers. DRL does not present any evidence to support these assumptions, instead relying on its complaint allegations regarding JourneyPure's misrepresentations about growth of its client base and expansions of its relationship with DRL. Given the evidence presented, no reasonable factfinder could conclude that these loss opportunity damages have been calculated with reasonable certainty. Summary judgment dismissing DRL's claim for loss opportunity damages is therefore appropriate.

## Conclusion

DRL's September 26, 2018 partial motion for summary judgment on its termination breach of contract claim is denied. JourneyPure's September 26, 2018 partial motion for summary judgment on DRL's software access and derivation breach of contract claims and on DRL's claim for loss of opportunity damages is granted.

Dated:    New York, New York
          December 6, 2018

_____
DENISE COTE
United States District Judge

15